IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARTINA L. BROWN                                                                       PLAINTIFF

        v.                        CASE NO.         2:10-CV-02197

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff filed an application for Title XVI supplemental security income (SSI) benefits in April 2007, alleging disability due to numerous problems, including diabetes, "borderline emphysema," back problems, headaches, "leg numbness," high cholesterol, and "bad teeth" (Tr. 93-95, 106). Plaintiff was 44 years old at the time she applied for benefits, and was 47 years old at the time of the final administrative decision (Tr. 63, 93). Plaintiff has a GED certification and past work experience as a processing plant line worker (Tr. 42, 107, 111).

The agency denied Plaintiff's application on initial determination and reconsideration,

and she requested a hearing before an Administrative Law Judge (ALJ), which ALJ Larry D. Shepherd held on September 10, 2008 (Tr. 9). After considering the evidence of record, the ALJ issued a decision dated December 9, 2008, finding that Plaintiff was not disabled for purposes of the Social Security Act (Tr. 54-63). The ALJ adequately summarized the medical and testimonial evidence of record in his decision, which is incorporated herein by reference (Tr. 56-63).

The ALJ found that, during the period of time at issue, Plaintiff retained the ability to perform sedentary work1/ with the additional restrictions of no operating motor vehicles and no work more complex than unskilled work (Tr. 58-59). These restrictions would preclude performing Plaintiff's past work, but would permit performing other work existing in significant numbers in the national economy, as shown by Vocational Expert Dale Thomas' testimony (Tr. 42-44, 61-63). Accordingly, the ALJ found Plaintiff's not disabled and denied her application (Tr. 63).

On October 29, 2010, the Appeals Council declined Plaintiff's request for review, making the ALJ's decision the Commissioner's final administrative decision for purposes of judicial review (Tr. 1-3). Plaintiff now seeks federal court review pursuant to 42 U.S.C. § 405(g).

**II.     Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining

the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.   Applicable Facts**

Johnson Regional Medical Center (JRMC) records disclose treatment between July 11, 2005 and August 4, 2007 (Tr. 194-271) for cellulitis, chronic cough with x-ray evidence of tiny uncalcified nodules in the right lung, headache, pain in gums (gingivitis), left ankle fracture, shingles, chest/side pain, shortness of breath (SOB), diabetes, nonspecific abdominal pain, pain in the right hand (tenosynovitis), pain in right shoulder (? pinched nerve), and chronic back pain, Sigmoid diverticulosis, lumbar MRI evidence of an anular tear at L4-5, with a bulging disc at L5-S1, pharynagitis, and UTI. On March 29, 2008, Glucose was high on lab report (Tr. 315-317).

In January 2006 the Plaintiff was seen at the Clarksville Medical Group complaining of pain in her teeth. She had multiple dental abscess and was placed on penicillin. At the time her weight was 194 pounds. Plaintiff was seen back in the clinic in March 2006 and the clinic notes state that she "has not stopped smoking" and that she had discontinued her Wellbutrin.[1] (T. 189)

The Plaintiff was tested for diabetes with an A1c score of 5.5%.[2] (T. 190) and her doctor

---

[1] Wellbutrin (bupropion) is an antidepressant medication. It works in the brain to treat depression. Wellbutrin is used to treat major depressive disorder and seasonal affective disorder. At least one brand of bupropion (Zyban) is used to help people stop smoking by reducing cravings and other withdrawal. See www.drugs.com Viewed 01/12/12.

[2] Glycated hemoglobin (A1C) test. This blood test indicates average blood sugar level for the past two to three months. It works by measuring the percentage of blood sugar attached to hemoglobin, the oxygen-carrying protein in red blood cells. The higher your blood sugar levels, the more hemoglobin you'll have with sugar attached.

felt this was "under good control". (T. 89). The Plaintiff called the clinic again in August 2006 to obtain a re-fill of propoxyphene-N 100[3] and in September 2006 to obtain a refill of Metformin.[4] Both request were denied. (T. 168).

On November 24, 2006 the Plaintiff was treated at Johnson Regional Medical Center for an injury to her left ankle as a result of a fall. (T. 212). The ankle was subsequently determined to be fractured. (T. 207)(T. 216).

On March 1, 2007 the Plaintiff was seen by Dr. Roxanne Marshall who noted that the Plaintiff had not kept a close eye on her sugars, but she had no complaints of headaches or chest pain. Dr. Marshall continued her on Metformin and also prescribed Genuvia 50 mg[5] once a day. She also told her to stop smoking. (T. 287). The Plaintiff was diagnosed with diabetic peripheral neuropathy by Dr. Marshall and prescribed Lyrica [6] (T. 288). In April 2007 the Plaintiff again fell and re-fractured her left ankle. (T. 284-285). On August 7, 2007 the Plaintiff was seen by Dr. R. Marshall on an unrelated matter. The Plaintiff's A1C test showed 6.5% (T. 277) and Dr. Marshall noted that her type two diabetes was "under excellent control". (T. 276).

On July 19, 2007 the Plaintiff was seen by Dr. Michael R. Westbrook, M.D. for a General

---

An A1C level of 6.5 percent or higher on two separate tests indicates you have diabetes. A result between 5.7 and 6.4 percent is considered prediabetes, which indicates a high risk of developing diabetes. Normal levels are below 5.7 percent. See www.mayoclinic.com viewed 1/12/12.

[3]Propoxyphene is in a group of drugs called narcotic pain relievers. Propoxyphene is used to relieve mild to moderate pain.

[4]Metformin is used to treat people with type 2 diabetes.

[5]Januvia is an oral diabetes medicine that helps control blood sugar levels. It works by regulating the levels of insulin your body produces after eating. Januvia is for people with type 2 diabetes (non-insulin-dependent) diabetes.

[6]Lyrica is indicated for: Management of neuropathic pain associated with diabetic peripheral neuropathy. See www.drugs.com. Viewed 1/18/2012.

Physical Exam. (T. 174-184). With the exception of a grip strength of 90% and some difficulty rising from the squatting position (T. 178) all of the Plaintiff test were within normal limits.

A Physical Residual Functional Capacity Assessment was performed by Dr. Bill F. Payne on July 20, 2007. (T. 183-190). Dr. Payne determined that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand and/or walk and sit for about 6 hours in an eight hour work day and had no limitations on her ability to push and/or pull. (T. 184). This opinion was confirmed by Dr. Collie on September 28, 2007 (T. 296-300).

On August 9, 2007 the Plaintiff was seen by Dr. Darib Espina, M.D. with the Arkansas Heart Center (T. 272-274) complaining of severe chest pain all the time. (T. 275). Dr. Espina diagnosed the Plaintiff with Chest Pain Syndrome but it was not consistent with ASHD.[7](T. 273). Dr. Espina counseled the Plaintiff at length about tobacco cessation and placed her on Chantix and a nicotine patch. She was told to stop smoking, lose weight, and take her cholesterol medication. (T. 274).

On January 8, 2008 Dr. Marshall issued an opinion that the Plaintiff suffered from severe diabetic peripheral neuropathy. (T. 302).

**IV.    Discussion**:

The ALJ determined that the Plaintiff had severe impairments of a back disorder, diabetes mellitus with diabetic neuropathy, and depression (T. 56) but she did not have an impairment that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix1. (T. 57) This finding was not challenged on appeal and is supported by the record.

The ALJ found that the Plaintiff had the residual functional capacity to perform sedentary

---

[7]abbreviation for arteriosclerotic heart disease.

work as defined in CFR 416.967(a) except that the Plaintiff could frequently lift and/or carry less than ten pounds, and occasionally ten pounds, frequently reach overhead, sit for a total of six hours in an eight hour work day, and stand and/or walk for a total of two hours in an eight hour work day but that the Plaintiff could not operate motor vehicles as part of her work and that she could perform unskilled work. (T. 59).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 *citing Lauer v. Apfel*, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence,

we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The ALJ's RFC limited the Plaintiff to sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary when carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a) and 416.967(a).

A person would not need to bend or twist and would need to stoop only occasionally to perform sedentary work. Cf. *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir.1992) (person would not need to crouch and would need to stoop only occasionally to perform substantially all sedentary and light jobs). *Ownbey v. Shalala* 5 F.3d 342, 344 (C.A.8 (Mo.),1993).

The only RFC assessment is by Dr. Bill Payne, a non-examining physician, which found that the Plaintiff could lift 20 pounds occasionally, 10 pounds frequently and sit and stand and/or walk for up to six hours in an eight hour day. (T. 184). Dr. Payne also noted there was no treating or examining source statements in his file (T. 189) and Dr. Payne was of the opinion that the Plaintiff could perform light work. It is obvious that the ALJ discounted the opinion of Dr. Payne. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence).

The Plaintiff's treating physician, Dr. Roxanne Marshall , diagnosed the Plaintiff with

-8-

diabetic peripheral neuropathy in March 2007. The Plaintiff had a long history of type II diabetes and had previously fallen and broken her ankle in November 2006 and she re-fractured the same ankle in April 2007. The ALJ seems to have adopted this diagnosis by finding that the Plaintiff had a severe impairment of "diabetes mellitus with diabetic neuropathy" (T. 56). In January 2008 Dr. Marshall had called the Plaintiff's diabetic neuropathy as "severe" and that she was not able to work because of this and other illnesses. (T. 302).

When determining disability benefits claimant's residual functional capacity (RFC), the ALJ must consider, in addition to medical evidence, the observations of treating doctors and others and the claimant's own description of her limitations. 20 C.F.R. § 404.1545. *See Willcockson v. Astrue,* 540 F.3d 878 (C.A.8 (Mo.),2008). The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

In this case the Plaintiff's diabetic condition is well documented in the evidence and even accepted by the ALJ. In addition the Plaintiff fractured the same ankle within a six month time period lending credibility to Dr. Marshall's assessment that her diabetic neuropathy was getting worse and had moved into a "severe" stage.

The Plaintiff's treating physician did not give an acceptable opinion concerning the Plaintiff's RFC assessment and her conclusory statement that the Plaintiff could not work and was "disabled" was rightly discounted by the ALJ. A medical source opinion that an applicant is "disabled" or "unable to work," however, involves an issue reserved for the Commissioner and

therefore is not the type of "medical opinion" to which the Commissioner gives controlling weight. *See Stormo*, 377 F.3d at 806 ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner." (internal marks omitted)); 20 C.F.R. § 404.1527(e)(1). Further, although medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner. See 20 C.F.R. § 404.1527(e)(2).

That being said it does not mean that the ALJ did not owe a duty to further develop the record concerning Dr. Marshall's opinion. The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984). "An ALJ should recontact a treating or consulting physician if a critical issue is undeveloped. *See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir.2005)." *Johnson v. Astrue*, 627 F.3d 316, 319–20 (8th Cir.2010). This is especially important where the treating physician had indicated in August 2007 that the Plaintiff's "Type 2 diabetes (was) under excellent control" (T. 276). It is unclear

just what Dr. Maxwell meant by "under excellent control" when she opines some months later that he condition was "sever" (T. 302).

The court believe remand is necessary to allow the ALJ to obtain a Residual Functional Capacity Assessment from Dr. Maxwell.

**V.     Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this 23rd day of January 2012.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE